IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CLIFFORD D. MATHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22-cv-49-CWB |
| ) | |
| ELMORE COUNTY COMMISSION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Clifford D. Mathews ("Plaintiff") filed this action in the Circuit Court of Elmore County, Alabama on December 27, 2021 against Henry Hines, Troy Stubbs, Bart Mercer, Mack Daugherty, Desirae Lewis, Barry Smith, Luke McGinty, Mitch Savage, and the Elmore County Commission. (Doc. 1-1 at ¶¶ 3-7). Proceedings were removed to this court on January 25, 2022. (Doc. 1). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, all parties thereafter consented to the exercise of full civil jurisdiction by a United States Magistrate Judge. (Docs. 15 & 16). On October 24, 2022, the court dismissed various claims and defendants—leaving only Plaintiff's Title VII claim pending against the Elmore County Commission for "those occurrences from April 2021 that were subject to administrative exhaustion with the EEOC and specifically identified in the Complaint." (Doc. 21 at pp. 9-10). The Elmore County Commission subsequently moved for summary judgment on that claim (Doc. 30), and the court now concludes that summary judgment should be granted.[1]

---

[1] Henry Hines, Troy Stubbs, Bart Mercer, Mack Daugherty, Desirae Lewis, Barry Smith, Luke McGinty, and Mitch Savage were previously dismissed as defendants (*see* Doc. 21 at p. 9), and Plaintiff's purported claims for "National Origin Discrimination," "Failure to Train," and "Agency" were dismissed with prejudice (*id.*).

1

### I.     Jurisdiction and Venue

Because Plaintiff's claim seeks relief under Title VII of the Civil Rights Act of 1964, subject matter jurisdiction is conferred by 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  *See* 28 U.S.C. § 1391; *see also* Fed. R. Civ. P. 4(k)(1)(A).

### II.    Factual Background

Plaintiff is an African-American male who was formerly employed by the Elmore County Highway Department. (Doc. 32-1 at ¶ 3; Doc. 32-2 at p. 6; Doc. 41-1 at ¶ 1).  Plaintiff was hired in 2007 as an equipment operator (Doc. 32-1 at ¶ 3; Doc. 41-1 at ¶ 1) but was promoted in March 2014 to the position of Construction Supervisor over the Work Order Crew charged with repairing and maintaining county roads and ditches (Doc. 32-1 at ¶ 3; Doc. 41-1 at ¶¶ 1-2). As of 2020, employees JC Daniels and Cliff Lazenby were assigned to the Work Order Crew and reported to Plaintiff.  (Doc. 32-1 at ¶ 4; 32-2 at p. 4, depo. pp. 66-67; Doc. 41-1 at ¶ 4). Both Daniels and Lazenby complained that Plaintiff had a bad attitude, and by approximately March 2020 Daniels expressed no longer wanting to work on Plaintiff's crew.  (Doc. 32-1 at ¶ 4). Luke McGinty, the Chief Engineer with oversight of the Elmore County Highway Department, investigated and then transferred Daniels to a different crew.  (*Id.* at ¶¶ 2-4).

Employees Mark Rheddon and Charles Murphy made similar complaints about Plaintiff  in November 2020 and likewise expressed that they did not want to work on his crew. (Doc. 32-1 at ¶ 5 & p. 19; Doc. 32-4 at ¶ 4 & p. 6).  Rheddon additionally complained to McGinty and Assistant Superintendent Mitch Savage that Plaintiff was deliberately sending crew members to incorrect work locations and then calling them "idiots" and "stupid."  (Doc. 32-1 at ¶ 5; Doc. 32-4 at ¶¶ 2, 4 & p. 6).  Another crew member, Elmore Young (who is African-American),

2

also complained to Savage that Plaintiff had a negative attitude.  (Doc. 32-1 at ¶ 5 & pp. 19, 59; Doc. 32-2 at p. 4, depo. p. 68; Doc. 32-4 at ¶ 4).  Later in November 2020, McGinty went to a jobsite where Plaintiff's crew was supposed to be working and discovered a single crew member present and improperly loading a dump truck by himself.  (Doc. 32-1 at ¶ 5).  According to McGinty, this presented an issue of work efficiency about which Plaintiff was counseled.  (*Id*.).

McGinty has provided sworn testimony that he observed Plaintiff's crew members being more at ease and generally in better spirits when Plaintiff was out sick in April 2021 and that he could tell crew members were agitated and unwilling to work with Plaintiff after he returned.  (Doc. 32-1 at ¶ 7).  McGinty and Maintenance Superintendent Anthony Moe spoke to the affected crew members, obtained written statements, and otherwise documented their discussions.  (Doc. 32-1 at ¶ 7 & pp. 53-55, 57, 59, 61; Doc. 32-3 at ¶ 4).  Lazenby stated that Plaintiff would send him to the wrong jobsite on purpose or that Plaintiff would leave without telling him where to go to work for the day, that Plaintiff would not answer his phone or would answer and yell at him for going to the incorrect location, and that Plaintiff left him alone to load a large concrete pipe on a truck by himself.  (Doc. 37-1 at ¶¶ 2-3; Doc. 32-6 at pp. 5-7).

Young too told McGinty that Plaintiff would deliberately send Lazenby to the wrong jobsite, that Plaintiff was hostile toward other workers, and that he did not want to work on Plaintiff's crew any longer.  (Doc. 32-1 at ¶ 7 & p. 59; Doc. 32-3 at ¶ 4).  John Arana, another member of Plaintiff's crew, similarly stated that Plaintiff had a bad attitude and that he did not like working on his crew.  (Doc. 32-5 at ¶ 4; Doc. 32-1 at ¶ 8).  Arana further stated that Plaintiff had made negative comments about Elmore County to a member of the general public and that Plaintiff had picked up a check for his personal lawn care business during work hours and while in his assigned country truck.  (Doc. 32-5 at ¶¶ 3-4; Doc. 32-1 at ¶ 8 & p. 59).  Young confirmed

to McGinty that Plaintiff in fact picked up a personal check during work hours and using a county truck.  (Doc. 32-1 at ¶ 8 & p. 59; Doc. 32-3 at ¶ 4).

On April 12, 2021, McGinty, Moe, and Barry Smith (Supervisor of Special Projects) met with Plaintiff, issued Plaintiff a formal write-up, demoted Plaintiff to the position of Equipment Operator III, and suspended Plaintiff for two days without pay.  (Doc. 32-1 at ¶ 9 & p. 59; Doc. 32-3 at ¶ 5).[2]  Plaintiff was cited for "9.4.4 Work Interference and 9.4.5 Inefficiency." (Doc. 32-1 at ¶ 9; Doc. 32-3 at ¶ 5).  The Employee Notice of Discipline was issued by Moe, was witnessed by Smith, and described Plaintiff's offending conduct as follows:

> Sending employees to the wrong location or not telling employees where to go. Loading truck w/trailer while an empty truck was on project. Not helping employees load equipment and materials.  Having a bad attitude making others not want to work with [you].

(Doc. 32-1 at ¶ 9 & p. 63; Doc. 32-3 at p. 8).  Plaintiff was informed that an investigation into the allegations over his improper use of a county vehicle and derogatory comments about Elmore County was ongoing and that a finding of either would be grounds for termination. (Doc. 32-1 at ¶ 9; Doc. 32-3 at ¶ 5 & p. 14).  Plaintiff denied the allegations at that time. (Doc. 32-1 at ¶ 9 & p. 59; *see also* Doc. 41-1 at ¶¶ 6, 8, 10, 15, 17).

On April 14, 2021, Plaintiff returned to work after completing the two-day suspension. (Doc. 32-1 at ¶ 10).  Upon his return, Plaintiff admitted that on one occasion he did pick up a check for his personal business while in a county truck and while on county time.  (Doc. 32-1 at ¶ 10; Doc. 32-3 at ¶ 6; *but see* Doc. 41-1 at ¶ 17).  Plaintiff was terminated the same date for having violated Section 9.6.23 "Unauthorized use of public property, County vehicle and time" and Section 9.6.29 "Failure to comply with ethics law. Use of County property for personal gain."

---

[2]  In a typographical error, the Employee Notice of Discipline incorrectly stated that Plaintiff was being demoted to the position of Equipment Operator II rather than III.  (Doc. 32-3 at ¶ 5).

4

(Doc. 32-1 at ¶ 10 & pp. 61, 65; Doc. 32-3 at ¶ 7 & p. 12).[3]  The Employee Notice of Discipline was issued by Moe and witnessed by Smith.  (Doc. 32-1 at ¶ 10 & p. 65).  On April 29, 2021, Plaintiff appealed to the Appeals Board, which upheld the termination.  (Doc. 32-1 at ¶ 11).[4]

The record reflects that during the six-week period from March 1, 2021 to April 14, 2021 Plaintiff was cited with violating five different sections of the Elmore County Policies and Procedures Handbook—four of which were major violations or Group Two Offenses.  (Doc. 32-1 at ¶ 12).  Moreover, the record is silent as to any employees who engaged in but were not cited for the same conduct as Plaintiff, and the record refutes that any other supervisor had ever been cited for the same or similar conduct as Plaintiff.  (Doc. 32-1 at ¶ 12).

## III.    Legal Standard

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party …. [A fact] is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (citation omitted).

---

[3]  In a sworn declaration submitted in opposition to summary judgment, Plaintiff denies using a county vehicle or county time for personal reasons.  (Doc. 41-1 at ¶ 17).  However, his briefing acknowledges that he admitted doing so to his supervisors.  (Doc. 41 at pp. 6, 10).

[4]  The record contains signed acknowledgments by Plaintiff confirming receipt of both the Elmore County Policies and Procedures Handbook (Doc. 32-1 at ¶ 6 & p. 49) and the Elmore County Highway Department Rules (*id*. at ¶ 6 & p. 51).  Section 9.6 of the Policies and Procedures Handbook identifies "Group two offenses" as "instances of unacceptable conduct by an employee which are very serious and will normally constitute grounds for dismissal upon the first occurrence of such conduct … ."  (*Id*. at p. 32).  Among those are "Unauthorized use, misappropriation, destruction, theft, or conversion of public property (*id*. at p. 34, § 9.6.23) and "Failure to comply with Alabama Ethics Law … " (*id*. at § 9.6.29).  The Highway Department Rules similarly state that "Highway Department equipment, supplies and work time are only for Highway Department business."  (*Id*. at p. 51, # 10).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can simply assert that the nonmoving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. … [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). Under either scenario, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists as to each element of the underlying claims. *See Celotex Corp.*, 477 U.S. at 324; Fed. R. Civ. P. 56(c)(1)(A).

To establish a genuine dispute of material fact, the nonmoving party must produce such evidence as would be sufficient for a reasonable trier of fact to return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) ("Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings."). When evaluating whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. Discussion

Plaintiff's pending claim seeks to recover for disparate treatment based upon his race. Plaintiff alleges that he received stricter discipline, including termination of employment, than Caucasian employees who violated similar rules. (Doc. 1-1 at ¶¶ 28-31). On the other hand, the Elmore County Commission contends that it is entitled to summary judgment "because [Plaintiff] cannot show substantial evidence of an adequate comparator who was treated more favorably" and "cannot show that the proffered, nondiscriminatory reasons for the disciplinary actions against him were false and just a mere pretext for discrimination." (Doc. 35 at p. 2).

In opposition to the request for summary judgment, Plaintiff argues that the record supports a claim of disparate treatment in this case through direct evidence:

> The evidence in this case is simple: a black man wrote up a white man under his supervision. The all-white men who reviewed the write-up turned their discriminatory animus against Mr. Mathews, a black man who had no job-related problems before he wrote-up JC Daniels a white man under his supervision. In a nutshell, Mr. Mathews was the victim of direct racial discrimination.

(Doc. 41 at p. 5).[5] Direct evidence is "evidence that, if believed, proves [the] existence of [a] fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)). "'[O]nly the most blatant remarks, whose intent could mean nothing other

---

[5] The Elmore County Commission asserts that Plaintiff's attempt to rely on a theory of direct evidence constitutes a new theory of liability not raised in the Complaint, *i.e.*, that Plaintiff was discriminated against after issuing discipline against a Caucasian employee. (*See* Doc. 42 at pp. 1-4). Nonetheless, and without intending to permit the new theory as an amendment to the Complaint, the court will undertake to explain why Plaintiff's Title VII claim would fail even if such an amendment were allowed.

than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." *Id.* (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002)). The record here contains nothing sufficient to constitute direct evidence of race discrimination. Even if a conclusion that Plaintiff was the victim of race discrimination because he was subjected to adverse employment action in the period after which he disciplined a Caucasian employee might be one <u>potential</u> outcome, it certainly is not the <u>only</u> conclusion that would flow from the factual timeline. Plaintiff thus is left to prove his discrimination claim circumstantially.

Claims relying upon circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *see also E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). To establish a *prima facie* case of race discrimination, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003). In attempting to show that proffered comparators were similarly situated, a plaintiff must show that they were "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019) (*en banc*); *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1247 (11th Cir. 2020). Indeed, "[a] comparator must be so similar that []he 'cannot reasonably be distinguished' from the plaintiff." *Vinson v. Tedders*, 844 F. App'x 211, 214 (11th Cir. 2021) (citations omitted).[6]

---

[6] "[A] comparator analysis must be conducted at the *prima facie* stage of the *McDonnell Douglas* framework—and not relegated to the pretext phase." *Lewis*, 918 F.3d at 1224.

Once a *prima facie* case has been presented, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets that burden, the plaintiff in turn must demonstrate that the articulated reason is a mere pretext for discrimination. *Lewis*, 918 F.3d at 1221. "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

For purposes of summary judgment, the Elmore County Commission concedes that Plaintiff has met his burden on the first three elements of a *prima facie* case but asserts that Plaintiff "cannot provide substantial evidence of an adequate comparator who was treated more favorably." (Doc. 35 at p. 14). The Eleventh Circuit has cautioned that "a valid comparison will turn not on formal labels, but rather on substantive likeness," and what "the in 'all material respects' standard entails will have to be worked out on a case-by-case basis, in the context of individual circumstances." *Lewis*, 918 F.3d at 1227-28. Nonetheless, the court did explain that a valid comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff," "will have been subject to the same employment policy, guideline, or rule as the plaintiff," "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff," and "will share the plaintiff's employment or disciplinary history." *Id.* at 1227-28; *see also Anthony v. Georgia*, 69 F.4th 796, 805 (11th Cir. 2023).

In his opposition to summary judgment, Plaintiff does not present any argument or evidence of a comparator who was "similarly situated in all material respects." The only alleged comparator that Plaintiff mentions is Daniels. (*See* Doc. 41 at pp. 6-7). It is undisputed, however, that Daniels was an equipment operator and not a supervisor like Plaintiff. (Doc. 32-1 at ¶ 13;

9

Doc. 32-2 at p. 4, depo p. 67).  Plaintiff and Daniels also had different supervisors (Doc. 32-1 at ¶ 13 &  pp. 14, 71) and were disciplined by different individuals (*id.* at pp. 17, 67-73).  On the current state of the record, Plaintiff therefore cannot meet his burden of showing that he was treated less favorably than a similarly-situated individual outside his protected class.  *See Anthony*, 69 F.4th at 805 (finding that the plaintiff and alleged comparator were not similarly situated because, while they were both state troopers who were investigated for coming to work intoxicated, they, among other things, held different ranks, the alleged comparator admitted to drinking and was not subjected to further testing, the alleged comparator was only suspected of violating the drinking policy, while plaintiff was investigated for violations of other department policies, and their investigations were conducted by different supervisors).

Although the Elmore County Commission undertakes in its briefing to distinguish all other potential comparators who were identified in the Complaint, Plaintiff has provided no argument or evidence in his summary judgment opposition to establish any of those individuals as comparators.  It is well settled that a plaintiff "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation and internal quotation marks omitted).  Because Plaintiff has failed to do so as to any putative comparator beyond Daniels, he cannot now rely upon any other individual listed in the Complaint as providing a basis for a *prima facia* case of discrimination.  And in any event, the undisputed evidence submitted by the Elmore County Commission would undermine such a similarly-situated comparison.[7]

---

[7] The only supervisors mentioned in the Complaint are Johnny Wingard and Butch Hammonds. (Doc. 1-1 at ¶ 18).  However, the evidence presented by the Elmore County Commission establishes that Wingard's and Hammonds's disciplinary histories were not similar to Plaintiff's (Doc. 32-1 at ¶ 15 & pp. 75-77; *id.* at ¶ 16 & pp. 79-88) and that no other supervisor had ever been cited for the same or similar misconduct as Plaintiff, *i.e.,* violations of five different sections of the

## V.     Conclusion

To prove a case of race discrimination under Title VII, Plaintiff is required to establish that the Elmore County Commission "intentionally discriminated" against him. *See, e.g., Lubetsky v. Applied Card Systems, Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002). No reasonable factfinder could reach that conclusion on the current record. Accordingly, it is hereby **ORDERED** that the pending Motion for Summary Judgment (Doc. 30) is **GRANTED**. A final judgment will be entered separately.

**DONE** this the 21st day of June 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**

---

policy and procedures manual, four of which were major violations or Group Two Offenses, over a single six-week period. (*Id*. at ¶ 12). Perhaps most importantly, the record contains no indication that any other supervisor had ever been reported to have deliberately sent employees to the wrong location, to have left an employee to load equipment and materials without assistance, or to have used county property on county time for personal gain. (*Id*. at ¶ 9 & pp. 63, 65; Doc. 32-3 at ¶¶ 5, 7 & pp. 8, 12, 14). Cliff Lazenby additionally was identified in the Complaint as a potential comparator, but he was not a supervisor and did not have the same history of conduct or discipline. (Doc. 32-1 at ¶ 14; Doc. 32-2 at p. 4, depo p. 67). To the extent Plaintiff's theory of liability has morphed into an allegation that he was discriminated against for having disciplined a Caucasian employee (*compare* Doc. 41 at pp. 5, 8 with Doc. 1-1 at p. 7-9, 11), Plaintiff has made absolutely no effort to demonstrate an appropriate comparator in that regard. The court further notes that Plaintiff has not argued that the evidence presents a "convincing mosaic" in support of his Title VII claim, and the court finds the current record insufficient to create an issue of fact under such an approach. *See Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022).